## BEALE v. YAZOO YARN MILL.

[88 South. 411, No. 21264.]

1. MASTER AND SERVANT. *"Willfully entice away or knowingly employ" servant implies actual knowledge.*

In an action brought by an employer against a third person for willfully interfering with, enticing, or knowingly employing a servant (who had entered into a contract for a given period), without obtaining the consent of the employer, it was error to charge the jury that it would find for the plaintiff if the defendant at the time of the hiring "knew or ought to have known that said contract had not expired." The words of the statute "shall willfully interfere with, entice away, or knowingly employ" mean that the party hiring must have known of the contract at the time of the hiring, and not that he might have known by diligent or reasonable inquiry. The knowledge must exist at the time of the hiring.

2. MASTER AND SERVANT. *Instruction on knowledge of prior hiring held incorrect.*

In such case it is reversible error to instruct the jury that if they believe from the evidence that the defendant had notice of any fact or circumstance sufficient to put an ordinarily prudent person upon inquiry, and that such inquiry would have developed the fact that the laborer's contract had not expired, and after such fact or circumstance came to defendant's notice he hired the tenant while the contract was in effect, to find for plaintiff. The knowledge of the first contract must exist at the time of the hiring, and mere circumstances which in themselves are insufficient to impute knowledge, but which must be coupled with other facts which would or might be disclosed by inquiry, do not supply the requisite proof.

3. MASTER AND SERVANT. *Instruction on ratification of breach of contract of hiring by continuing in service held incorrect.*

In an action by an employer against another for hiring a servant before his contract of service expired, where the evidence for the defendant showed a breach of the contract by the employer prior to the hiring by the defendant, it was error to instruct for the plaintiff that, even though the jury may believe from the evidence that one or more of the servant's family were

discharged without cause, or that the servant or members of his family were occasionally laid off without cause, and notwithstanding these facts the servants continued after such facts in the employment and worked under his contract, this constituted a ratification of the contract under its terms as originally made.

4. MASTER AND SERVANT. *Instruction on good faith as defense to charge of wrongful hiring held erroneously refused.*

Where an employer of a laborer brings an action against another for wrongful hiring of the servant of the plaintiff before the end of his term of service, and where the evidence for the defense shows, or tends to prove, that the employer breached his contract by discharging members of the servant's family, whose service is embraced in the contract, it is error to refuse the defendant an instruction to the effect that if the servant told the defendant that he and members of his family had been discharged and that plaintiff had told servant to take his boy and go to the farm, and that the defendant, in good faith, believed such statements were true at the time of the hiring the jury should find for the defendant, even though such statements were not true in fact.

APPEAL from circuit court of Yazoo county.

HON. W. H. POTTER, Judge.

Action by the Yazoo Yarn Mill against R. M. Beale Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*E. L. Brown,* for appellant.

*J. G. Holmes,* for appellee.

No brief found in the record for either side.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant for knowingly employing, willfully interfering with, and enticing away employees under the provisions of section 1146, Code of 1906 (section 874, Hemingway's Code) ; the affidavit reciting:

"That the said defendant, without the consent of the plaintiff, heretofore willfully interfered with, enticed away, induced to leave plaintiff's employment and knowingly employed one J. S. Porter, a laborer, who was then and there under a contract of employment with the plaintiff for a specified time, said contract not having expired, the said defendant then and there well knowing that the plaintiff's contract with the said Porter has not expired. To the great damage," etc.

The contract relied on in support of the declaration reads as follows:

"This contract, made and entered into this 14th day of September A. D. 1918, by and between Yazoo Yarn Mill, party of the first part, and J. S. Porter, party of the second part, witnesseth:

"That for and in consideration of the sum of ninety dollars, cash in hand paid to the party of the second part by the party of the first part, receipt whereof is hereby acknowledged, the party of the second part hereby agrees to move himself and his family to the said mill, before the expiration of two days, and to work for the said mill for current wages to be paid himself and the members of his family; the party of the second part agrees to render good and faithful and efficient services to said mill, and agrees that two dollars and fifty cents per week, due to himself or any member of his family, for wages, may be deducted by said mill and applied on any indebtedness due said mill; that in case of controversy, or in the event of the termination of this contract, all sums due the party of the second part or any member of his family may be applied in full to any indebtedness due said mill by the party of the second part; that the party of the first part has employed the party of the second part, and the party of the second part has agreed to work for the party of the first part, at said mill, for current wages for a term beginning the 16th day of September, 1918, and ending the 1st day of May, 1919; that the services to be rendered under this contract are such

as may be prescribed by the superintendent of said mill or its overseers.

"Witness our hands this 14th day of September, 1918.

"[Signed] Yazoo Yarn Mill, by M. W. Driver, Mgr., Party of the First Part. J. S. Porter, Etta May, Estell, Eugene, by J. S. Porter, Party of Second Part."

The manager of the appellant testified to the making of the contract and to advancing Porter ninety dollars to pay off an account which he then owed for which the appellant, Beale, was responsible by way of guaranty; that he took the said Porter and his family to the mill and they entered into the service of the yarn mill. He testified that on or about the 26th day of December, 1918, he had a conversation with Mr. Beale in which he told Mr. Beale that he heard he was going to move Porter and that Beale said that was true; that he told him that if he did he would be subject to damages; that there was a law in the state and that people generally abided by court decisions and jury verdicts; that in the latter part of January Beale moved Porter upon his place, away from the mill; that Porter still owed part of the money advanced, sixty-three dollars and fifteen cents, for which this suit was brought. He denied that he had authorized Beale to hire Porter or Porter to abandon his employment, and denied breaching the contract in any respect or discharging any of the members of the family under the contract, except Porter's youngest child, whose age was such as to make it doubtful whether he could work in the mill, and except that he laid off Porter for about two hours one day after he found out he was going to quit anyway, or was dissatisfied.

Beale testified to a conversation on December 26th and gives a different version of what transpired from that of the manager, Driver. Beale says he was asked whether he was contemplating moving Porter on his farm and he told Driver, the manager, that he was; that Porter had said he could not make a living at the mill on account of not getting work for all the members of his family, and that he had promised to give him employment; that the manager

stated that he had a contract with Porter, but that he
(Beale) did not know the duration of the contract; that
in the conversation he told the manager that he did not
contemplate moving Porter right away; that it would be
all right for the mill to work Porter until about the 1st of
March, and that the manager said he would be mighty glad
to do that and agreed to work Porter until the 1st of March
following; that afterwards he saw Porter's children idle
and asked Porter why they were not working and that
Porter told him they had been laid off or discharged; that
after this conversation with Porter he saw Porter idle
and asked why he was not working, and that Porter told
him he had gone to the foreman and told the foreman un-
less they could work his children and give them employ-
ment that he could not work as he could not make a living
without the help of his children, and that the foreman
would not agree to take his son back at the mill, but told
Porter to take them and go to the farm; that he was tired
of fooling with them.  Beale further testified that he be-
lieved in good faith what Porter had said and that he had
traded with Porter believing what Porter had related as
stated above.  Porter corroborated Beale's statements and
said he was not finally employed by Beale until after they
were all laid off and the foreman had refused to re-employ
his son.  Porter's wife and daughter also testified, in effect,
that the daughter had been discharged or laid off several
different times, and that his wife had gone to the foreman
and requested that he give employment to the daughter, as
Mr. and Mrs. Porter had a large number of children unable
to work and were dependent upon the labor of the father,
mother, daughter, and two sons.

The foreman, Mr. Carpenter, also testified that he had
discharged the boy, Estell, and would not take him back
as he could not get work out of him; part of Carpenter's
testimony being as follows:

"Q. Mr. Carpenter, what was it you told Mr. Porter that
Sunday evening—you told him to take his boy and go to
the cotton fields with him?  A.  He asked me—

"Q. Is that what you told him? A. Yes, sir; that is what I told him.

"Q. You told him just as Mr. Porter says—to take his boy and go on, and go to the cotton field? A. That I couldn't work that boy.

"Q. You say you meant for the little boy to go on to the cotton field—is that the idea? A. I meant for him to take them all.

"Q. Take them all and go? A. Yes, sir.

"Q. But finally you told him to go\to the cotton patch, you didn't want him at the mill? A. I told him to take the other one and go to the cotton patch—I was not working him.

"Q. You say you meant for him to take his family to the cotton patch, and let him stay there? A. I didn't have anything to do with him.

"Q. You did have the others? A. Yes, sir.

"Q. You told him to take them to the cotton patch, you didn't want them in the mill any more—that is in substance? A. Yes, sir, I told him that.

On the trial the court gave for the plaintiff the following instructions, among others, which are complained of:

"The court instructs the jury that if you believe from a preponderance of the evidence that Porter had contracted with the plaintiff for the period beginning September 16, 1918, and ending May 1, 1919, and that before the expiration of said contract the defendant, Beale, at a time when he knew or ought to have known that said contract had not expired, employed Porter to work for him for the year 1919, without the consent of the plaintiff, then you will find for the plaintiff and assess its damage at sixty-three dollars and fifteen cents."

"The court instructs the jury that if they believe from the evidence that the defendant, Beale, had notice of any fact or circumstance sufficient to put an ordinarily prudent man upon inquiry, and that such inquiry would have developed the fact that Porter's contract with the plaintiff had not expired, and that after such fact or circum-

stance came to the notice of the defendant, Beale, the said Beale employed Porter without the consent of the plaintiff, while the contract was in effect, then you must find for the plaintiff for the full amount sued for."

"The court instructs the jury that even though you may believe from the evidence that one or more of Porter's family were discharged without cause, or that Porter or members of his family were occasionally laid off from work without cause, yet, if you further believe from the evidence that Porter did not on this account quit the employment of the plaintiff, but that he and the others of his family returned and continued to work under his contract, then such action on the part of the said Porter constituted a ratification of the contract in original terms."

"The court instructs the jury that you must find for the plaintiff in this case, unless you believe that plaintiff consented for Porter to leave its employment and go with Beale, or unless you believe that at the time Beale employed Porter the plaintiff had breached its contract with Porter, and that said contract was inoperative; provided you further believe that such employment of Porter by Beale was at a time when Beale knew or ought to have known that Porter's contract with plaintiff had not expired."

The defendant requested and was refused the following instruction:

"The court instructs the jury for the defendant that, if you believe from the testimony that J. S. Porter told the defendant, Beale, at the time he approached him to move, that the mill had discharged his daughter, and had discharged his two sons, and had laid him off, and that the foreman had told him (Porter) that he could take his boy and go to the cotton field, and that the manager, Driver, had told him to take them and go on, or words to that effect, and if you further believe from the evidence that the defendant believed, in good faith, the statement by Porter, and relied thereon, and then moved him to his place, then your verdict should be for the defendant, and

this is true whether or not the said Porter told the truth when he made these statements to the defendant."

The statute above referred to (section 1146, Code of 1906 [section 874, Hemingway's Code] reads as follows:

"If any person shall willfully interfere with, entice away, knowingly employ, or induce a laborer or renter who has contracted with another person for a specified time to leave his employer or the leased premises, before the expiration of his contract without the consent of the employer or landlord, he shall, upon conviction, be fined not less than twenty-five dollars nor more than one hundred dollars, and in addition shall be liable to the employer or landlord for all advances made by him to said renter or laborer by virtue of his contract with said renter or laborer, and for all damages which he may have sustained by reason thereof. The provisions of this section shall apply to minors under contract made by a parent or natural guardian."

The first instruction for the plaintiff, above set out, proceeds upon the idea that the statute imposes a liability where there was an employment made if the circumstances or any circumstance came to the knowledge of the person hiring that such contract existed or was in force. We think this is broader than the statute. The statute is criminal and highly penal, and its terms are not to be extended by construction. The words of the statute "shall willfully interfere with, entice away, knowingly employ, or induce a laborer," carry with them the idea that the party employing must know of the contract. The word "knowingly" does not merely refer to knowing that he is employing a party, but carries the idea that he must know of the contract, and not that he must have some knowledge of some fact which if followed up would lead to knowledge. The knowledge must exist at the time the employing takes place.

In Words and Phrases, First Series, we find the following:

"The primary definition of the word 'knowingly' is 'with knowledge.'" *West* v. *Wright*, 98 Ind. 335.

Again: "'Knowingly,' as used in Laws 1865, chapter 361, authorizing the bringing of actions to recover certain penalties against whoever shall knowingly sell, supply, etc., milk in an improper condition specified, should be construed to mean actual personal knowledge."

Again: "Where the president of a corporation did not know of the obstruction of a public road, and had no part therein, he is not guilty of willfully or knowingly obstructing such road."

Again: "In its ordinary acceptation the word 'knowingly,' when applied to an act or thing done, imports knowledge of the act or thing so done, as well as an evil intent or a bad purpose in doing such thing. So that a charge in an indictment that defendant knowingly deposited in the mails a printed book, etc., the character of which was obscene, lewd, and lascivious, sufficiently charges, after verdict, both that the book is in fact obscene and that the defendant knew it"—citing *Price* v. *United States,* 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727; *Rosen* v. *United States,* 161 U. S. 29, 16 Sup. Ct. 434, 40 L. Ed. 606.

Likewise the word "willfully" carries with it a knowing or conscious interference with the relation. A man cannot be said to have done an act willfully and knowingly if he does not have the actual knowledge of the relation involved. It is not sufficient that a man may know, but to do an act knowingly he must know, and it was error to give an instruction embodying the idea that he ought to have known of the contract.

The second instruction for the plaintiff, above set out, tells the jury that if Beale had notice of any fact or circumstance sufficient to put a man upon inquiry, and that such inquiry would have developed the fact that the contract had not expired, to find for the plaintiff. This is plainly error.

The fourth instruction for the plaintiff, above set out, tells the jury that even though the jury may believe that

one or more of Porter's family was discharged without cause, or was occasionally laid off without cause, yet, if they do not further believe that Porter did not on this account quit the employment, but returned and continued to work, that such return constituted a ratification of the contract in its original terms. In other words, this instruction tells the jury that, even though the plaintiff did not comply with his contract and discharged a part of the laborers, if Porter continued to work after such fact, it was equivalent to making a new contract. This instruction had no place in this trial. The contract involved called for continuous employment of the members of Porter's family, and if the plaintiff breached the contract and Porter returned to work, it in no way waived his right to recover for the time lost during the period laid off. The fact that his necessity may have forced him to work in order for him and his children to eat did not wipe out the old contract and create a new one.

The fifth instruction for the plaintiff, above set out, is also subject to criticism, in that it embraced the words "or ought to have known that Porter's contract with plaintiff had not expired."

The instruction refused for the defendant, above set out, sought to inform the jury that if Porter told the defendant, Beale, at the time he approached him to move, that the mill had discharged his daughter and his two sons and had laid him off, and that the foreman had told him (Porter) that he could take his boy and go to the cotton field, and that the manager, Driver, had told him to take them and go, or words to that effect, and that if they believed that the defendant believed, in good faith, the statements of Porter and relied thereon, and then moved him to his place, they should find for the defendant whether Porter's statement was true or not.

It seems to us that this instruction on behalf of the appellant, defendant, should have been given. As pointed out above, the statute contemplates that the willful interference or the knowingly employing must be done with

knowledge that a contract was in force at the time. If the defendant in good faith believed what Porter told him with reference to the discharge of members of his family, that is to say, if the plaintiff had breached the contract and he employed Porter under the belief that the contract was breached by the plaintiff, he would not come within the terms of the statute prohibiting such employment as the statute mentions.

It is contended by the appellee that the case of *Armistead* v. *Chatters,* 71 Miss. 509, 15 So. 39, is authority to the contrary. We think the present case is distinguished from the Chatters Case in that the breach in the present case involved in the above instruction is a breach on the part of the plaintiff, and it is not a case of a contract being breached by Porter if the hypothesis embraced in this instruction be true. We do not understand the Chatters case to hold what the appellee contends, and this court heretofore has not, it seems to us, so understood it.

In *Jackson* v. *State,* 16 So. 299, this court held that, on a trial for willfully interfering with and enticing away a servant while under contract for a specific time, the mere employment of the servant after he had left his former master is not sufficient to sustain a conviction.

In *Hoole* v. *Dorroh,* 75 Miss. 257, 22 So. 829, this court, in construing the statute as contained in section 1068, Code of 1892, and in holding the statute constitutional, said:

"Nor do we think the statute subject to the criticism of counsel, wherein he supposes that 'though the employer drives off the laborer, or refuses to pay him or beats him,' still the laborer is held within the grasp of the employer. The statute must have a reasonable construction. If the employer or landlord breaks his contract in some substantial respect, and especially in the ways mentioned, the laborer or tenant would be discharged from the obligation of the contract; and whatever absolves the laborer or tenant would be a shield for the protection of the new master or landlord."

Giving the statute a reasonable interpretation, it must be held that if the employer breached the contract himself he could not hold Beale for employing a laborer during the time which the contract would have to run had it not been breached. As said above, if the yarn mill had failed to employ members of Porter's family, it breached the contract. To hold otherwise would be to endanger the constitutionality of the statute and bring the decision in conflict with both the decisions of this court and those of the United States Supreme Court in construing and defining the rights of citizens under the Thirteenth and Fourteenth Amendments to the federal Constitution.

In *State* v. *Armistead,* 103 Miss. 790, 60 So. 778, Ann. Cas. 1915B, 495, this court, in an opinion, declared section 1147, Code of 1906, unconstitutional as being in conflict with section 15, Constitution of Mississippi of 1890, and in conflict with the Thirteenth and Fourteenth Amendments to the federal Constitution. The court quoted with approval the language of the United States Supreme Court in *Allgeyer* v. *Louisiana,* 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832, in which that court said:

"The liberty mentioned in that [Fourteenth] Amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livlihood by any lawful calling; to pursue any livlihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned."

The court also referred to *Bailey* v. *Alabama,* 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191, in which the supreme court of the United States, interpreting the Thirteenth and Fourteenth Amendments, held an act of Alabama unconstitutional as being in conflict with those amendments to the federal Constitution. The supreme court of the

United States, in the *Bailey Case, supra,* placed such construction upon the Thirteenth and Fourteenth Amendments as gives to a laborer the right to terminate a contract for personal service, subject only to damages for its breach. Under the decision of this court, if Porter was justified in abandoning his contract for any default on the part of the mill, the employer, such would exonerate appellant in thereafter hiring Porter, though the original term or period of the contract had not expired. It is difficult to say how the appellant could be prohibited from contracting with Porter if Porter himself had a right to make the contract. However this may be, we do not feel warranted in extending the construction of the statute so as to bring it in conflict with the decisions of the federal court. Of course as long as the contract has not been breached, then third persons having knowledge of the existence of the contract may not offer inducements or do any act which will interfere with the harmonious relations under the contract. But if the contract was ended by the plaintiff's breach thereof, no action would lie for employment of the laborer. In interpreting and administering a statute the court should not construe the law or administer it so as to endanger its constitutionality.

The judgment will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*