ARMSTRONG *v.* BISHOP.[*]

(Division A. June 11, 1928.)

[117 So. 512. No. 27204.]

354

*Corpus Juris-Cyc References: Master and Servant, 39CJ, p. 1372, n. 52; p. 1373, n. 60. On the question of liability of third person for inducing servant to break his contract with master, see annotation in 21 L. R. A. 238; 5 L. R. A. (N. S.) 1091; L. R. A. 1915, 1076; 15 R. C. L. 50; 3 R. C. L. Supp. 416.

*Somerville & Somerville, Howorth & Howorth* and *Fulton Bell,* for appellant.

*Roberts & Hallam,* for appellee.

SMITH, C. J. The appellant recovered a judgment against the appellee for damages alleged to have been sustained by him because of the employment by the appellee, without his consent, of a laborer who was under contract with him for a specified time,

On motion of the appellee this judgment was set aside by the court below, and a judgment in favor of the ap-

pellee was rendered, dismissing the suit, on the theory that the court erred in not granting the appellee's request for a directed verdict.

Chapter 160, Laws of 1924 (Hemingway's 1927 Code, section 917), provides that:

"If any person shall willfully interfere with, entice away, or who shall knowingly employ, or who shall in any manner induce a laborer or renter who has contracted with another person for a specified time to leave his employer or the leased premises, before the expiration of his contract without the consent of the employer or landlord in writing signed by said landlord or employer under or with whom said laborer had first contracted, he shall . . . be liable to the employer or landlord for all advances made by him to said renter or laborer by virtue of his contract with said renter or laborer, and for all damages which he may have sustained by reason thereof."

According to the evidence for the appellant, Nancy Davis contracted with him in the early part of the year 1926 to make a crop on land owned by him, she to receive one-half of the crop as compensation for her labor in making it. She entered upon the performance of this contract and planted the crop. About the 1st of April she advised the appellant that she intended to go to the town of Durant for a few days, and would like to know what the amount of her indebtedness to him then was. The appellant gave her a signed statement, showing that the amount then due him by her was sixty-seven dollars. About two days thereafter the driver of a truck left with the cook at the appellant's residence a check signed by the appellee for the amount due the appellant by Nancy Davis. The truck driver, without the appellant's knowledge, moved Nancy, her family, and household effects from the land she was cultivating to land owned by the appellee, by whom she was then employed.

The appellee did not herself employ Nancy, but Nancy was employed for her by her husband and agent, J. W. Bishop, who testified as follows:

"She (meaning Nancy Davis) came to me, on the 31st day of March I think it was, said she was hunting a home, and asked me if I had a place for her, and I told her that I thought I did. I then asked her where she lived. She told me she lived with Mr. Reuben Armstrong, and that she was going to move from Mr. Armstrong; that she wanted a home; and I asked her then what she owed Mr. Armstrong, and she told me she didn't know. Then I asked her what was her trouble, and she said she was dissatisfied, and I advised her, then, to go back and see Mr. Armstrong, and see what she owed, and if it was all right with Mr. Armstrong I would pay her account, and move her. . . . I advised her, though, to go back and make the crop with Mr. Armstrong, and not to move, if she could make it all right with him, and she told me she was not going to make the crop with Mr. Armstrong, that she was going to move, and I asked her, then, if she had told Mr. Armstrong that she was going to move, and she said she had not; but she went away. I never expected to see her any more. I had never seen her before, and the next day she sent her boy with a written statement of the account, and said Mr. Armstrong said it was all right."

Bishop then sent Armstrong a check for the amount due him by Nancy, and instructed the bearer to move Nancy and her household effects to land owned by the appellee, which was done, and Nancy was thereafter employed by him to make a crop for Mrs. Bishop. Other testimony of Bishop's makes it clear that he knew that Nancy was under a contract with the appellant to make a crop for him.

On cross-examination Bishop was asked, "A written statement of her account you took to mean consent for them to move?" To which he replied, "That was the general rule; we farmers do."

Armstrong was thereafter called as a witness in his own behalf, and was asked, "What if any custom existed as to giving authority for a negro to remove from a plantation?" but, on objection by the appellant, was not permitted to answer. The court then sustained a motion by the appellant to exclude Bishop's evidence as to the existence of such a custom.

As we understand the appellee's contentions, they are that when J. W. Bishop, her agent, employed Nancy Davis (1) he did not know that she had contracted with Armstrong for a specified time; (2) he understood that Armstrong had released Nancy from the obligation of her contract; (3) Nancy had already broken her contract with, and left the employment of Armstrong.

As hereinbefore set forth, Bishop knew when he employed Nancy that she was under a contract with Armstrong to make a crop for him; and one under a contract to make a crop for another is a laborer within the meaning of the statute, whether his compensation therefor is to be money or a part of the crop, *Ward* v. *State,* 70 Miss. 245. It is true that Nancy's contract with Armstrong did not fix the exact date when it would expire by limitation, but the time therefor is necessarily implied, being that which was necessary to make the crop, which includes the harvesting thereof. Compare *Goolsby* v. *State,* 98 Miss. 702, 54 So. 155.

Under the statute, the consent which an employer must give before another can knowingly employ his employee must be in writing, and the consent which Nancy advised Bishop that Armstrong had given to her leaving his employment was not so manifested.

When Nancy approached Bishop, she told him she intended to leave Armstrong, and was evidently seeking some one who would pay her account with Armstrong and give her |employment, and her later message to Bishop could have meant only that Armstrong had consented to her leaving him; that she intended to do so, and

wished Bishop to pay her account with Armstrong and give her employment. She had not, therefore, left Armstrong's employment when Bishop moved her from Armstrong's land to that of the appellee.

*Beale* v. *Yazoo Yarn Mill*, 125 Miss. 807, 88 So. 411, and *Thompson* v. *Box*, 147 Miss. 1, 112 So. 597, relied on in this connection by the appellee, are not in point. In the Beale case the appellant, in employing the laborer, acted on information to the effect that the laborer's first employer had broken his contract with the laborer, and thereby released the laborer from further obligation to him. The Thompson case was decided on the theory that the laborers had broken their contract with, and left, their first employer before they were again employed.

The appellee has filed a cross-assignment of errors, and requested that, in event the judgment dismissing the appellant's suit be reversed, the original judgment entered on the jury's verdict be also reversed. The cross-assignment of errors are all to the effect that the evidence discloses no liability of the appellee to the appellant, and therefore what we have hereinbefore said applies thereto.

The judgment of the court below will be reversed, and the original judgment entered on the verdict of the jury will be reinstated.

Reversed, and judgment here for the appellant.

*Reversed.*