## STATE v. MOSE ARMSTEAD.

### [60 South. 778.]

1. CRIMINAL LAW. *Constitutional law. Police power. Legislative power. Constitution* 1890, *section* 15. *Master and servant. Involuntary servitude. Freedom of contract. Code* 1906, *section* 1147.

   It is proper for the legislature to enact laws to maintain social order, to promote the general welfare and happiness of the people. It is the duty of the legislature to provide by statute proper rules for the citizens' conduct, to safeguard the life, liberty and rights of the people, but this must be done within constitutional limitations.

2. CONSTITUTIONAL LAW. *Involuntary servitude. Code* 1906, *section* 1147.

   Section 1147, Code 1906, providing for punishment of a laborer, renter or share cropper who has made one contract in writing, and makes a second contract without giving notice of the first, is violative of the Constitution of 1890, section 15 and the thirteenth amendment of the Federal Constitution as imposing involuntary servitude, otherwise than as a punishment for crime and as restricting the right of contract and abridging the privileges and immunities of citizens.

3. SAME.

   While the police power of a state is broad it cannot justify the enactment of a law which amounts to an arbitrary and unwarranted interference with the rights of the citizen which are guaranteed by the Constitution.

APPEAL from the circuit court of Panola county.
HON. N. A. TAYLOR, Judge.

Mose Armstead was charged with violating the labor contract law. From a judgment sustaining a demurrer to the affidavit, the state appeals.

The facts are fully stated in the opinion of the court.

*Frank Johnston,* assistant attorney-general, for the state.

This is a prosecution against Mose Armstead for the breach of a labor contract under section 1147 of the Code of 1906. Judge Taylor, the circuit judge, sustained a demurrer to the affidavit in the case and discharged the appellee. From this the district attorney takes an appeal in the name of the state.

I will call the attention of the court to the case of *Alonzo Bailey* v. *State of Alabama,* decided by the Supreme Court of the United States at the October term, 1910, upon the construction of an Alabama statute similar to the Mississippi statute under consideration, and the question of its unconstitutionality under the Federal Constitution, and the fourteenth amendment thereto. The Supreme Court not only held that the Alabama statute was in violation of the terms of the fourteenth amendment but that it was in violation of the provisions of the acts of Congress forbidding peonage. See U. S. Rev. Stat., secs. 1990 and 5526, and the U. S. Comp. Stat. 1901, 1260 and 3755, which acts of Congress were intended to secure the enforcement of the fourteenth amendment. (This case is reported in 219 U. S. Sup. Ct. 250, 55 L. Ed. 218, bottom page 191.)

REED, J., delivered the opinion of the court.

The state appealed from the judgment of the circuit court, sustaining a demurrer to the affidavit in this case, charging defendant with the violation of the labor contract law, as provided in section 1147 of the Code of 1906. The affidavit charges that "on the 17th day of January, 1912, Mose Armstead was under contract in writing with affiant to work on shares as a share cropper with him during the year 1912 in making a crop upon the premises of affiant in said justice's district, county, and state, said contract being dated September 14, 1911,

and witnessed by two witnesses whose names appear thereto; and the said Mose Armstead, on the 17th day of January, 1912, entered upon the said premises and upon the performance of said contract, and on said date wrongfully, willfully, and unlawfully, before the expiration of said contract and without the consent of affiant, left said premises and made a second contract in said justice's district, county, and state with R. M. Arnold, without giving notice to said Arnold of his contract with affiant." The demurrer filed by defendant to the affidavit presents the objection that "the statute under which said affidavit is drawn, and under which defendant is sought to be penalized, is unconstitutional and void."

Section 1147 of the Code of 1906 was originally chapter 101 of the Laws of 1900. The title to that act of the legislature is "an act to punish a laborer, renter or share cropper who has made one contract in writing and makes a second contract without giving notice of the first." Section 1147 of the Code of 1906 is as follows: "Any laborer, renter or share cropper who has contracted with another person for a specified time in writing, not exceeding one year, who shall leave his employer or leased premises before the expiration of his contract, without the consent of the employer or landlord, and makes a second contract with a second party without giving notice of the first contract to the second party, shall be guilty of a misdemeanor, and on conviction shall be fined not exceeding fifty dollars."

We do not find that the constitutionality of this law has ever been decided by this court. The statute has been before the court in two cases. In the case of *Hendricks* v. *State,* 79 Miss. 368, 30 South. 708, it was decided that the charge against the defendant had not been proven, and that it was not necessary to the disposition of the cause for the court to decide the constitutional question; and in *Ex parte Harris,* 85 Miss. 4, 37 South. 505, the court decided that the testimony was insufficient

to hold the defendant, who was before the court on a writ of *habeas corpus* seeking his discharge, and that under the situation presented it was not necessary to pass upon the constitutional question presented. However, we note that in both of these cases counsel for the defendant contended that the statute was unconstitutional.

Section 15 of the Constitution of Mississippi provides that "there shall be neither slavery nor involuntary servitude in this state, otherwise than in the punishment of crime, where the party shall have been duly convicted." Article 13 of the Constitution of the United States is in the following words: "Neither slavery nor involuntary servitude, except as punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction. Congress shall have power to enforce this article by appropriate legislation." In article 14 of the Constitution of the United States the rights of all citizens are protected by the limitation on the several states in enacting laws, as follows: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We fully recognize the general powers given to the legislature to enact laws for the purpose of governing the people. Under our Constitutions the lawmaking power is generally lodged in the legislature; however, there are limitations, and these arise chiefly from the Constitutions. In discussing the broad powers given to the legislature in the political organization of the American states, REDFIELD, C. J., in *Thorpe* v. *Rutland & Burlington R. R. Co.,* 27 Vt. 140, 62 Am. Dec. 625, said: "They have committed these in the most general and unlimited manner to the several state legislatures, sav-

ing only, such restrictions as are imposed by the Constitution of the United States, or of the particular state in question.'' Mr. Cooley, in his Constitutional Limitations, page 131, says: ''The legislative power we understand to be the authority, under the Constitution, to make laws, and to alter and repeal them. Laws, in the sense in which the word is here employed, are rules of civil conduct, or statutes, which the legislative will has prescribed. 'The laws of a state,' observes Mr. Justice Story, 'are more usually understood to mean the rules and enactments promulgated by the legislative authority thereof.' ''

It is incumbent upon the state to maintain social order. It is, therefore, proper for the legislature to enact all laws necessary to this end. For the purpose of promoting the general welfare and happiness of the people, it is the duty of the legislature to provide by statute proper rules for the citizen's conduct. It is also the duty of the legislature to safeguard the life, liberty, and rights of the people by the necessary laws. In the course of government it may be necessary for citizens to be restricted in what they may deem to be their natural rights for the general good of the public. But the Constitutions limit the extent to which their rights and privileges may be abridged.

In this case we are confronted with the serious question as to whether the statute interferes with the rights and liberties of the citizen, and we must also consider the question as to whether it is in violation of his right to freedom in contract, and whether the plain purpose of the statute is to use the criminal law for the purpose of enforcement of the contract for personal services. It will be noted that the statute is intended to punish the laborer, renter, or share cropper who had made a contract with another person. There is nothing in the law aimed at the other party to the contract, called his employer. The offense consists of his leaving the leased

premises before the expiration of his contract without the consent of the employer landlord and making another contract with another party without giving notice of the first contract which he had with the employer landlord. The punishment is by fine, but it necessarily follows that the failure to pay the fine carries with it imprisonment. This last gives ground for the objection to the law that a result of a prosecution for a violation may be involuntary servitude for a breach of a civil contract.

In the case of *Allgeyer* v. *Louisiana,* 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832, Mr. Justice PECKHAM, delivering the opinion of the court, said: "The liberty mentioned in that (fourteenth) amendment means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned."

It was decided in the case of *Zillmer* v. *Kreutzberg,* 114 Wis. 530, 90 N. W. 1098, 58 L. R. A. 748, 91 Am. St. Rep. 934, that a statute forbidding, under penalty, an employer from discharging an employee because he is a member of a labor organization, violates the constitutional guaranty of liberty.

In the case of *State* v. *Julow,* 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443, it was decided that a statute declaring that to be a crime which consists alone in the exercise of a constitutional right, as that of terminating a contract, is unconstitutional. It is said in that case that a constitutional guaranty of the enjoyment of life, liberty, and property carries with it all that effectuates and renders complete the unrestrained

enjoyment of that guaranty, and this includes the right to acquire property by labor and contract, and terminating a contract at pleasure, being civilly liable for any unwarranted termination. ' In discussing this question, SHERWOOD, J., in delivering the opinion of the court, said: "Here the law under review declares that to be a crime which consists alone in the exercise of a constitutional right, to-wit, that of terminating a contract, one of the essential attributes of property—indeed, property itself—under preceding definitions. Brought to the bar of a court on such a charge, the accused would have been prejudiced, in so far as the criminality of the act charged is concerned. No question could there be made or admitted as to the quality of the act. That would have been settled by the previous legislative declaration, and it would only remain to find the fact as charged in order to declare the guilt as charged. But the fact as charged, as already seen, is not a crime, and will not be a crime, so long as constitutional guaranties and constitutional prohibitions are respected and enforced."

We find that a statute in Alabama, enacted in 1901, which contains the same provisions as our statute now being considered, was declared in the case of *Toney* v. *State,* 141 Ala. 120, 37 South. 332, 67 L. R. A. 286, 109 Am. St. Rep. 23, 3 Ann. Cas. 319, to be unconstitutional.

It seems the Alabama act made it a misdemeanor for anyone under contract in writing to labor or work land for any given time to break his contract and enter into another one with a different person without the consent of his employer, and without sufficient excuse, and without giving notice of his old contract to the person with whom he makes the new one. The court decided that this act was unconstitutional and void, as violative of the constitutional guaranty of life, liberty, and property, and as abridging the privileges and immunities of citizens. SHARP, J., delivering the opinion of the court, said: "If the conditions prescribed by this act can be validly im-

posed, the door is open for the imposition of others more
onerous. 'Questions of power do not depend on the de-
gree to which it may be exercised. If it may be exer-
cised at all, it must be exercised at the will of those in
whose hands it is placed.' *Brown* v. *Maryland,* 12
Wheat, 419, 6 L. Ed. 678. Because of the restrictions
it purports to place on the right to make contracts for
employment and concerning the use and cultivation of
land, this act is wholly invalid.''

We find that the case of *Toney* v. *State, supra,* was
cited by the Supreme Court of the United States in the
case of *Bailey* v. *Alabama,* 219 U. S. 219, 31 Sup. Ct. 145,
55 L. Ed. 191. In that case the Supreme Court of the
United States held unconstitutional, and as offending
against the prohibition of the thirteenth amendment to
the Federal Constitution, an Alabama statute which is
like section 1148 of the Mississippi Code of 1906. Mr.
Justice HUGHES, in delivering the opinion in that case,
said: ''By a statute passed by the legislature of Ala-
bama in 1901, it was made a misdemeanor for anyone
who had made a written contract to labor for or serve
another for any given time to leave the service before the
expiration of the contract and without the consent of the
employer, and to make a second contract of similar na-
ture with another person without giving the second em-
ployer notice of the existence of the first contract. This
was held unconstitutional, upon the ground that it in-
terfered with freedom of contract. *Toney* v. *State,* 141
Ala. 120, 37 South. 332, 67 L. R. A. 286, 109 Am. St. Rep.
23, 3 Ann. Cas. 319. But, judging it by its necessary
operation and obvious effect, the fundamental purpose
plainly was to compel, under the sanction of the crimi-
nal law, the enforcement of the contract for personal
service.'' In showing that the Alabama statute involved
in the Bailey case was condemned by the thirteenth
amendment, Mr. Justice HUGHES said: ''Peonage is a
term descriptive of a condition which has existed in

Spanish America, and especially in Mexico. The essence of the thing is compulsory service in payment of a debt. A peon is one who is compelled to work for his creditor until his debt is paid. And in this explicit and comprehensive enactment Congress was not concerned with mere names or manner of description, or with a particular place or section of the country. It was concerned with a fact, wherever it might exist—with a condition, however named, and wherever it might be established, maintained, or enforced. The fact that the debtor contracted to perform the labor which is sought to be compelled does not withdraw the attempted enforcement from the condemnation of the statute. The full intent of the constitutional provision could be defeated with obvious facility, if through the guise of contracts under which advances had been made, debtors could be held to compulsory service. It is the compulsion of the service that the statute inhibits, for, when that occurs, the condition of servitude is created, which would be not less involuntary because of the original agreement to work out the indebtedness. The contract exposes the debtor to liability for the loss due to the breach, but not to enforced labor."

After a careful consideration of the law as announced by the courts of the states and of the nation, we are forced to conclude that the statute before us, section 1147 of the Mississippi Code of 1906, is in violation of the Constitution of Mississippi and of the United States, that the effect of the law will be to force citizens into involuntary servitude, that his rights to contract will be restricted, and that his privileges and immunities will be abridged. The legislature, when enacting the law, doubtless believed that they were presenting a wise and necessary provision for the purpose of requiring the fickle laborers in our cotton country to reasonably observe their contracts. We are fully aware of the situation regarding the uncertainty of plantation croppers,

tenants, and employees fulfilling their agreements. We can understand how this statute might be very helpful to the successful operation of a planting enterprise. We appreciate the motives of our lawmakers in passing the act, and we are in sympathy with their effort in so far as it purposes to make more stable labor conditions on our Mississippi farms. However, over and against this is the more important question of protecting the liberties and rights of the citizen. To permit an abridgement in this instance might lead to a more extended and serious interference. We must look at the general principles involved. They cannot be confined to this state. They cannot be applied only to farm laborers. They are applicable to all American citizens. Through the provisions of the Constiutions they are intended to safeguard him in his life and liberty and the reasonable enjoyment and use of his property.

There is no necessity by reason of the general welfare of the public sufficient to require that the rights of the individual shall yield, in this case to the rights of the public. The police power of the state may be broad, but it cannot rise above the Constitution. It cannot justify the enactment of a law which amounts to an arbitrary and unwarranted interference with the rights of the citizens which are guaranteed by the Constitution. The citizens who would be liable to prosecution under this statute belong to the class of the humble and poor. Because they are among the weak of our people, it is no less important that they be protected in their rights and liberties.

The trial court did not err in sustaining the demurrer to the affidavit on the ground that the statute is unconstitutional.

*Affirmed.*