[Crim. No. 751. Second Appellate District, Division Two.—June 3, 1921.]

THE PEOPLE, Respondent, v. W. H. HOLDER, Appellant.

[1] CRIMINAL LAW—MOTION IN ARREST OF JUDGMENT—ORDER NOT AP-
PEALABLE.—An order denying a motion in arrest of judgment is
not appealable, and an appeal therefrom must be dismissed.

[2] ID.—APPROPRIATION OF MONEYS BY BUILDING CONTRACTOR—EM-
BEZZLEMENT.—Where money is paid to a contractor under a build-
ing contract with a property owner and such contractor, instead
of expending the money for labor and materials, appropriates it

to other uses, he is not guilty of the crime of embezzlement defined in section 503 of the Penal Code.

[3] ID.—FAILURE TO PAY DEBTS—UNCONSTITUTIONAL LEGISLATION.— Any legislation that makes it a crime for one to use his own money for any purpose other than the payment of his debts is violative of section 15 of article I of the state constitution, which expressly inhibits imprisonment for debt except in the case of fraud.

[4] ID.—BREACH OF AGREEMENT TO PAY DEBTS—EMBEZZLEMENT OF OWN MONEY.—Where, under the terms of the contract between a property owner and a building contractor, the title to moneys paid to the latter are vested in him, he cannot be found guilty of embezzlement because he breached a provision in the contract whereby he agreed to use the moneys to pay certain of his bills.

[5] ID. — RIGHT OF CONTRACT — PAYMENTS IN TRUST — UNCONSTITUTIONAL LEGISLATION.—A statute that, in its practical operation, in effect declares that under any contract between the owner of property and a building contractor the payments that may be made to the latter shall not be absolutely his own to do with as he pleases, but shall be held by him in trust to pay debts due by him to certain preferred creditors, is unconstitutional in that it is an infringement upon the inalienable right of contract.

[6] ID.—RIGHT OF CONTRACT—CONTROL BY LEGISLATURE.—The right to make contracts, common to all legitimate vocations, is a property right, the enjoyment of which is guaranteed by the constitution; and though the legislature may prescribe the form in which contracts shall be executed in order that they may be valid or binding, it cannot limit the right of the parties to incorporate into their contracts, otherwise valid, such terms as may be mutually satisfactory to them.

[7] ID.—LIABILITY OF RIGHT OF CONTRACT TO POLICE REGULATION.— While the right of contract is subject to reasonable police regulation, the police power cannot be made a cloak under which to overthrow or disregard constitutional rights. It is only when the general welfare, the interests of the public as distinguished from those of individuals, will be protected that the right of contract may be limited by a general exercise of police power.

[8] ID.—MISAPPROPRIATIONS BY CONTRACTOR—UNCONSTITUTIONAL CODE AMENDMENTS.—The 1907 amendment of section 506 of the Penal Code, providing that "any contractor who appropriates money paid to him for any use or purpose, other than for that which he re-

3. Constitutionality of statute providing for imprisonment for breach of contract of labor or rental, notes, 14 Ann. Cas. 1060; 21 L. R. A. (N. S.) 242.

Constitutionality of imprisonment for debt, notes, 37 Am. St. Rep. 758; 34 L. R. A. 634; L. R. A. 1915B, 645.

ceived it, is guilty of embezzlement," is an unwarranted invasion of the rights guaranteed by our state and federal constitution; and the clause added to section 1919, providing that "the payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor shall be applied," is likewise void and wholly ineffective.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Reversed.

The facts are stated in the opinion of the court.

John S. Cooper, M. G. Phillips and Cooper, Collings & Shreve for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

FINLAYSON, P. J.—Defendant, who was convicted of embezzlement under an. indictment in two counts, similar in form, appeals from the judgment and from an order denying his motion for a new trial. [1] He likewise appeals from an order denying his motion in arrest of judgment, but as that order is not appealable, the appeal therefrom must be dismissed.

[2] The evidence discloses that appellant, as contractor, had entered into a building contract with each of two lot owners for the construction of a house. Each instrument provided for a contract price to be paid appellant. Certain sums, parts of the stipulated contract price, were paid appellant under each contract, but instead of expending the money for labor and materials, he appropriated to other uses amounts which, the prosecution claims, should have gone for those purposes. The aggregate amounts so appropriated were, in one instance, $1,500, in the other, $2,670. These two amounts are the sums mentioned in the respective counts of the indictment.

The indictment has heretofore been before this court on an application for a writ of *habeas corpus.* (*Ex parte Holder,* 48 Cal. App. 468, [192 Pac. 90].) The ground there taken by appellant, as petitioner for the writ, was that each count of the indictment charged an offense under Penal Code,

section 506, as amended in 1919 (Stats. 1919, p. 1090), and that that section, as so amended, is unconstitutional. We then decided, without determining whether offenses were charged under section 506, that the indictment was sufficient to charge offenses under section 503 of the same code.

In presenting his argument for a reversal of the judg-. ment, appellant returns to the line of attack adopted by him in the *habeas corpus* proceeding, contending for the unconstitutionality of section 506 as amended in 1919. The attorney-general declines to follow that argument and insists upon an affirmance on the ground that under the evidence offenses have been proven under section 503.

The court did not err in overruling the demurrer to the indictment. For the reasons stated in the *habeas corpus* proceeding, 48 Cal. App. 468, [192 Pac. 90]), each count is sufficient to warrant a conviction under section 503, and appellant was properly convicted if the evidence adduced at the trial suffices to show a violation of that section. We think it clear, however, that under the evidence appellant is not guilty of the crime of embezzlement defined in section 503 of the Penal Code. The moneys which it is claimed were embezzled were paid to appellant under his respective contracts with the lot owners. No part of the money thus paid to him was the property of another. It was appellant's own property, and his only. Appellant, therefore, could not justly be found guilty under section 503, which defines embezzlement as the "fraudulent appropriation of property by a person to whom it has been intrusted." In no true sense of the words can it be said that that which is absolutely one's own is property that "has been intrusted" to him. As the crime of embezzlement is ordinarily understood and defined, one cannot be guilty of embezzling his own property. (*People* v. *Goodrich,* 138 Cal. 472, [71 Pac. 509]; 20 Corpus Juris 416.) The question, therefore, is: Does the evidence justify appellant's conviction under section 506 as it now stands? And if it does, is that section, as thus amended, a valid and constitutional enactment?

The following is the language of section 506 as it now reads: "Every trustee, banker, merchant, broker, attorney, agent assignee in trust, executor, administrator, or collector, or person otherwise intrusted with or having in his control

property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, and any contractor who appropriates money paid to him for any use or purpose, other than for that which he received it, is guilty of embezzlement, and the payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor shall be applied.''

That part of the section which provides that ''any contractor who appropriates money paid to him for any use or purpose, other than for that which he received it, is guilty of embezzlement,'' was added in 1907. (Stats. 1907, p. 892.) In 1919 the legislature added to the section the concluding sentence, that providing that ''the payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor shall be applied.'' (Stats. 1919, p. 1090.)

It is quite evident that appellant could not rightfully be convicted of embezzlement under section 506 as it read prior to the amendment of 1907. For, since the money, when paid to him, was paid to and received by him under his contract with the lot owner—it was so stated, without contradiction, by the witnesses on both sides—the money was not property intrusted to him or in his control ''for the use of any other person.'' By his contract with each lot owner he did, it is true, expressly agree to ''pay all claims of all persons performing labor upon, or furnishing materials for said work or buildings.'' And at the time when the several sums were paid to him he orally agreed to use them in the payment of labor and material bills. But there is no claim that appellant procured the payment of these sums by fraudulent misrepresentations. That is not the theory upon which the indictment was drawn. The prosecution's theory is that, notwithstanding the moneys, when paid to appellant, were, under the terms and provisions of the building contracts, his own property, he, nevertheless,

53 Cal. App.—4

was guilty of embezzlement under section 506 as it now reads. Though he may have agreed to pay certain of his debts with the moneys that were paid to him under his contract, the title to the moneys so received by him, if the terms of his contract alone be considered, was vested in him absolutely and unconditionally.

It follows from the foregoing that to hold appellant guilty of embezzlement it must be held: 1. That, by reason of the amendment of 1907, a contractor who breaches his agreement to pay certain of his debts with the moneys paid him under his contract, is guilty of embezzlement, notwithstanding the title to the moneys is vested in him; or 2. That the amendment of 1919 is constitutional, and that its provisions so enter into and become a part of every building contract that, the terms of such contract to the contrary notwithstanding, the money paid to the contractor under his contract does not become his own property, but is held by him in trust for the uses and purposes mentioned in the 1919 amendment. In our opinion the legislature is without the power to do either of these things. That is, the legislature has not the power to provide that a contractor who breaches his agreement to pay a certain class of debts with money that is his own shall, for that reason alone, be deemed guilty of a crime punishable with imprisonment. Nor has it the power so to interfere with the right of contract as to provide, in effect, that money paid to a contractor under his contract shall not be absolutely his own property to do with as he pleases, but shall be received by him in trust to pay a certain favored class of creditors.

[3]  Any legislation that makes it a crime for one to use his own money for any purpose other than the payment of his debts is violative of section 15 of article I of the constitution of this state, which expressly inhibits imprisonment for debt except in cases of fraud. (*Ex parte Crane*, 26 Cal. App. 22, [145 Pac. 733]; *Ex parte Hollman*, 79 S. C. 9, [14 Ann. Cas. 1105, 21 L. R. A. (N. S.) 242, 60 S. E. 19]; *State* v. *Paint etc. Co.*, 92 Tenn. 81, [36 Am. St. Rep. 68, 20 S. W. 499]; *State* v. *Williams*, 150 N. C. 802, [63 S. E. 949]; *Peonage Cases*, 123 Fed. 685 et seq.) The provision in the California constitution inhibiting imprisonment for debt ''in civil actions'' cannot

be evaded by making the nonpayment of a debt a crime. (*State* v. *Paint etc. Co., supra.* See, also, *Ex parte Crane, supra; Carr* v. *State,* 106 Ala. 38, [54 Am. St. Rep. 19, 34 L. R. A. 634, 17 South. 350]; *Kansas City* v. *Pengilley,* 269 Mo. 59, [L. R. A. 1917B, 551].) In the *Peonage Cases,* Judge Jones, in a forceful opinion, very pertinently says that "when a man's liberties are taken from him because he does not pay a debt, and he is punished if he does not perform a civil contract, . . . he is put in prison bounds and is imprisoned for debt in the meaning of the constitution." (123 Fed. 686.) In *Ex parte Hollman, supra,* the court uses this language: "It is strenuously urged, however, that the act does not provide for imprisonment for debt under civil process, and that the general assembly may make an act criminal and punishable by imprisonment which is not fraudulent nor recognized as morally wrong. The power of the general assembly to make an act criminal which was before innocent is familiar. But the legislative power to make acts criminal and punishable by imprisonment cannot be extended to an invasion of the rights guaranteed the citizens by the constitution. It is impossible to frame a valid statute punishing by imprisonment the exercise of the right to religious liberty, or the right to petition for the redress of grievances, or the right to be exempt from imprisonment for debt except in cases of fraud. These are all constitutional rights, which cannot be abridged under the guise of legislation against crime. The exercise of them cannot be crime."

[4] It follows, therefore, that the judgment cannot be upheld upon the theory that, notwithstanding the title to the money paid to appellant under his contract was vested in him, he nevertheless could be found guilty of embezzlement because he breached his agreement to use the money to pay certain of his bills.

The sole remaining theory upon which the people may attempt to justify appellant's conviction is that, by reason of the amendment of 1919, the statute itself so enters into and becomes a part of every building contract that, the provisions of the contract to the contrary notwithstanding, the absolute, unconditional title to money paid to the contractor under his contract does not pass to him, but is received by him in trust for certain uses. A statute that

consummates such a result abridges the privileges of citizens of the United States and deprives them of property without due process of law. All men have the inalienable right of "acquiring, possessing and protecting" property (Const., art. I, sec. 1); and no person shall be deprived of property "without due process of law" (Const., art. I, sec. 13; and Fourteenth Amendment). The right of property antedates all constitutions. Every person has the right to enjoy his property and improve it according to his own desires in any way consistent with the rights of others. This right is invaded if he is not at liberty to contract with others respecting the manner in which and the terms upon which his property shall be improved. The legislature, therefore, cannot, without invading such right of the property owner, declare that he shall not contract with a builder upon such terms that all moneys paid the latter for his work and skill shall be absolutely his own. And, conversely, the legislature cannot thus limit the right of contract without invading the contractor's inalienable right to dispose of his labor and skill upon such terms as may be mutually agreeable to himself and the owner of the property.

A man's constitutional liberty means more than his personal freedom. It means, with many other rights, his right freely to labor and to own the fruits of his toil. [5] A statute that, in its practical operation, in effect declares that under any contract between the owner of property and a building contractor the payments that may be made to the latter shall not be absolutely his own to do with as he pleases, but shall be held by him in trust to pay debts due by him to certain preferred creditors, is unconstitutional in that it is an infringement upon the inalienable right of contract.

[6] The right to make contracts, common to all legitimate vocations, is a property right, the enjoyment of which is guaranteed by the constitution; and though the legislature may prescribe the form in which contracts shall be executed in order that they may be valid or binding, it cannot limit the right of the parties to incorporate into their contracts, otherwise valid, such terms as may be mutually satisfactory to them. (*Stimson Mill Co.* v. *Braun*, 136 Cal. 122, [89 Am. St. Rep. 116, 57 L. R. A. 729, 68 Pac. 482]; *Gibbs* v.

*Tally*, 133 Cal. 373, [60 L. R. A. 815, 65 Pac. 970];
*Shaughnessy* v. *American Sur. Co.*, 138 Cal. 543, [69 Pac.
250, 71 Pac. 701]; *Snell* v. *Bradbury*, 139 Cal. 379, [73
Pac. 150]; *Roystone Co.* v. *Darling*, 171 Cal. 532, [154 Pac.
15]; *Binford* v. *Boyd*, 178 Cal. 458, [174 Pac. 56]; *Kelly*
v. *Johnson*, 251 Ill. 135, [36 L. R. A. (N. S.) 573, 95 N. E.
1068]; *George Bolln Co.* v. *North Platte etc. Irr. Co.*, 19
Wyo. 542, [39 L. R. A. (N. S.) 868, 121 Pac. 22].)

[7]   The right of contract is, it is true, subject to rea-
sonable police regulation. But the amendment of 1919 is
not a valid exercise of that power. As said by Mr. Justice
Henshaw in the *Jentzsch Case*, 112 Cal. 473, [32 L. R. A.
664, 44 Pac. 804]: "While the police power is one whose
proper use makes most potently for good, in its undefined
scope and inordinate exercise lurks no small danger to the
republic, for the difficulty which is experienced in defining
its just limits and bounds affords a temptation to the legis-
lature to encroach upon the rights of citizens with experi-
mental laws, none the less dangerous because well meant."
It is well settled that the police power cannot be made a
cloak under which to overthrow or disregard constitutional
rights. It is only when the *general* welfare, the interests
of the public as distinguished from those of individuals,
will be protected that the right of contract may be limited
by a general exercise of the police power. (*Binford* v.
*Boyd, supra; In re Farb*, 178 Cal. 592, [3 A. L. R. 301,
174 Pac. 320].) In view of this principle, impregnably
established in our jurisprudence, it cannot successfully be
contended that the amendment in question is a valid police
regulation. The payment of debts that may be due laborers
or material men is not calculated to conserve the safety,
health, or *general* welfare of the community. There can
be nothing so injurious to the public welfare in the failure
of a debtor to pay his just debts as to require an exercise
of the police power. In all free governments the good
sense of mankind, since the day when imprisonment for
debt was abolished, has condemned and frowned down
any attempt to coerce the performance of civil obligations
by criminal penalties. (*Gibbs* v. *Tally, supra; Ex parte
Dickey*, 144 Cal. 234, [103 Am. St. Rep. 82, 1 Ann. Cas.
428, 66 L. R. A. 928, 77 Pac. 924]; *Binford* v. *Boyd, supra;
Ex parte Hayden*, 147 Cal. 649, [109 Am. St. Rep. 183,

1 L. R. A. (N. S.) 184, 82 Pac. 315]; *Peonage Cases, supra; Bailey* v. *Alabama,* 219 U. S. 219, [55 L. Ed. 191, 31 Sup. Ct. Rep. 145, see, also, Rose's U. S. Notes]; *Kansas City* v. *Pengilley, supra; Toney* v. *State,* 141 Ala. 120, [109 Am. St. Rep. 23, 3 Ann. Cas. 319, 67 L. R. A. 286, 37 South. 332]; *State* v. *Armstead,* 103 Miss. 790, [Ann. Cas. 1915B, 495, 60 South. 778].)

[8] For these reasons we hold that the amendment of 1907 is an unwarranted invasion of the rights guaranteed by our state and federal constitutions, and that, therefore, the clause added to section 506 by the amendment of 1919 is void and wholly ineffective. This being so, the judgment must be reversed, for the reason that, under the evidence, appellant has not been shown to have violated either section 503 or section 506, shorn of its unconstitutional provisions.

The judgment and order denying appellant's motion for a new trial are reversed. The appeal from the order denying appellant's motion in arrest of judgment is dismissed.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 1, 1921.

Angellotti, C. J., Lennon, J., Sloane, J., and Shurtleff. J.. concurred.

Shaw, J., and Lawlor, J., voted for granting of petition.