[Crim. No. 1037.   Third Appellate District.—June 27, 1928.]

THE PEOPLE, Respondent, v. W. B. BULLOCK, Appellant.

A. H. Ludeman and R. Probasco for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The appellant was convicted upon an information based upon section 506 of the Penal Code, and appeals from the judgment based thereon, and also from the order of the court denying his motion for a new trial.

The information upon which the defendant was arraigned contained three counts. A verdict of not guilty was rendered upon counts I and II, and a verdict of guilty upon count III, which reads as follows:

"That said W. B. Bullock, on or about the 17th day of September, at and in the County of Tehama, State of California, and prior to the filing of this information, he then and there being a contractor employed by Jerry Myers and Alice P. Myers to construct and remodel a certain dwelling house there situate, was then and there entrusted with, and there was paid to him by said Jerry Myers and Alice P. Myers, the sum of $250.00 in lawful money of the United States, for the payment of materialmen and laborers, for work performed and material furnished in the performance of his said contract for the construction and remodeling of the said dwelling house; and that the said defendant, after being entrusted with the said sum of money as aforesaid, did thereafter, on or about the 14th day of October, 1927, wilfully, unlawfully, fraudulently and feloniously, appropriate and convert to his own use and embezzle the said sum of $250.00 paid to him as aforesaid.

"Contrary to the form, force and effect of the Statute in such cases made and provided, and against the peace and dignity of the People of the State of California."

The record shows that on or about the eighth day of September, 1927, the appellant entered into a building agreement with one Alice E. Myers for the rebuilding and remodeling of a small dwelling-house in the town of Corning, county of Tehama; that for and in consideration of the sum of $2,500 to be paid therefor, the appellant agreed to furnish all the material and supply all the work and labor to be performed thereon, at his own proper cost and expense. The contract provided for progressive payments.

Upon this appeal it is urged that every legal question involved herein was passed upon and decided in favor of the appellant in the case of *People* v. *Holder,* 53 Cal. App. 45 [199 Pac. 832].

The testimony set forth in the transcript bears out this contention, and shows that the property alleged to have been embezzled was paid to the defendant under and by virtue of the building contract entered into between the defendant and said Myers, and that the money received by him was not received in trust, but as and for his own money under the contract. The testimony of Mrs. Myers, in so far as it relates to count III, is as follows: "Q. (By Mr. Pugh [district attorney]): Now, in connection with the delivery of the check of October 18th for $250.00, state whether Mr. Bullock at that time, at the time of the request for you to advance any checks, did he give you some sort of a slip of paper or a piece of paper with certain names on it. A. He gave me a paper. Q. A paper? A. Yes, sir, payroll. Q. Now, the paper that I just handed to you he gave to you when? A. Before I gave him the $250.00; he said he wanted to pay the men. Q. He said this statement was a statement of what he owed the men? A. Yes, sir. Q. Well, what did you tell him, if you told him anything? A. I told him I would have Mr. Myers write him a check so he could pay the men. Q. And Mr. Myers; was he there at that time? A. No, he was not there. I told him when he came home and I told Mr. Bullock I would have him write a check. Q. Well, then, did you deliver that check which was written by Mr. Myers, that evening? Did you deliver it that evening or the next morning? A. I think it was the next morning. Q. Where was Mr. Bullock when you gave him the third check? A. He came to my house. Q. Was there any conversation at that time there between—was there any conversation that you recall between yourself and Mr. Bullock? A. Yes, he said he would give me a deed to Mr. Zubro's lot as security for the last check that I handed him. Q. Now, the last check, the last check is the $250.00, dated October 12, 1927? A. Yes, sir; so when he told me that, I asked where it was, and he said it was downtown, he would have to go and get it; and I never saw him any more. Q. You say he was going to get Mr. Zubro's deed for you? A. Yes; he was going to give me the deed as security to the last $250.00 check that I gave him. Q. That is Mr. Bullock told you that he had a deed coming from Mr. Zubro for this lot or did have a deed from him? A. Yes. Q. And he was going to deliver to you that deed?

A. Yes; he was going to let me have it to hold as security for the last $250.00 check that I gave him." And upon cross-examination the witness further testified: "Q. And then he came to you and asked for an advance on this contract, did he? A. Then he asked me for $1,000.00, the next time. He said he wanted to pay the men their wages. Q. You were advancing him that money on the contract? A. Yes, sir. Q. Now, isn't it true, with reference to all of the three checks, these checks, that on each occasion he said he would like to have an advance of money on the contract? A. Yes; and he wanted to finish the work; and we of course, wanted to keep it going, and were anxious to have the house finished so we could have the house, and I gave him the money so he could get it finished soon." The testimony of J. V. Myers, who drew the checks in question, shows that he had no conversation with the defendant in relation to the $250.00 check mentioned in the third count, but that he did have a conversation with the defendant as to two former checks which is directly in line with that of Mrs. Myers that the money was all advanced upon the contract, as shown by the following questions and answers: "Q. When Mr. Bullock came to you about getting the advances on the contract and getting the money to work with, etc., what did he say to you when he asked you for this first $300.00 check? A. He asked me if I was willing to advance any money, that he might pay his carpenters, and for the material, and keep the building going on steady, and I said sure I would. Q. Now, what did he say when you gave him the $1,000.00 check? A. He asked me if I could advance him a pretty good amount of money, and I asked him why, and he said he would like to have about $1000.00, and I said fine, I am glad to help you out to help the building get along faster. Q. What did he say he wanted to do? A. He said he wanted to get some machinery so he could progress faster on the job; also, I think he had some men he wanted to pay off there, is what he told me. Q. That is he wanted some money to work on, some surplus money; is that it? A. I don't know as to that; yes, I think he did; he wanted something to work on." This witness who drew the check involved in this appeal had no conversation with the defendant in relation thereto.

This testimony shows very clearly that the checks delivered to the appellant were delivered to him as advances upon the contract, and became his property, and were not received by the defendant in any trust capacity. It thus appears that no case is made out against the defendant under section 506 of the Penal Code as it stands "shorn of its unconstitutional provisions," as held in the case of *People* v. *Holder, supra.*

The opinion in the case of *People* v. *Holder, supra,* is so full and complete in its presentation, reasoning, and conclusions upon all the questions presented to us in this case, and which are identical with the questions considered in that case, that nothing more can be added to what is there stated, and it would be only a useless effort on our part to prolong this opinion by following the reasoning therein, and coming to the same conclusion.

Upon the authority of the case of *People* v. *Holder, supra,* the order and judgment appealed from herein are reversed.

Hart, J., and Finch, P. J., concurred.