[Crim. No. 5488. Second Dist., Div. One. Feb. 23, 1956.]

THE PEOPLE, Respondent, v. ARNOLD E. VANDERSEE, Appellant.

Matthews & Hill and John J. Hamilton for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information containing six counts, filed by the district attorney of Los Angeles County, defendant was accused in Counts I, III, V and VI with violations of section 405 of the Labor Code of California, while Counts II and IV charged the crime of grand theft.

Following the entry of not guilty pleas to all counts charged in the information, trial by jury was duly waived and it was stipulated that the cause be submitted on the transcript of testimony adduced at the preliminary examination. Exhibits were admitted into evidence and filed and the trial continued to July 22, 1954. After several continuances the trial was finally set for March 16, 1955, upon which date defendant moved to withdraw his plea of not guilty to Counts I and VI (violations of section 405 of the State Labor Code). As to these counts, pursuant to stipulation, a mistrial was declared and the previous order of submission upon the preliminary examination transcript was vacated. Defendant thereupon pleaded guilty to Counts I and VI and the matter was referred to the probation department for report and recommendation. When the cause was again called on June 28, 1955, defendant made a motion to withdraw his pleas of guilty theretofore entered as to Counts I and VI. The motion was denied and defendant sentenced to state prison. The remaining four counts were dismissed.

From the "Judgment and sentence on Counts one and six," and from the order denying his "motion to vacate pleas of guilty," defendant prosecutes this appeal.

In urging a reversal appellant relies solely upon his challenge to the constitutionality of sections 405 and 406 of the Labor Code, to the violation of which he pleaded guilty. He grounds this attack upon the claim that these sections "interfere with and violate the right of persons to contract and is not a proper subject matter under the police power of the legislature affecting all classes of persons."

It is appellant's contention that the aforesaid Labor Code sections being unconstitutional the judgment is void, and should be reversed with directions to the court below to dismiss the information.

Section 405 of the Labor Code provides as follows: "Any property put up by any employee or applicant as a bond shall not be used for any purpose other than liquidating accounts between the employer and employee or for return to the employee or applicant and shall be held in trust for this purpose and not mingled with the property of the employer. No contract between the employer and employee or applicant shall abrogate the provisions of this section. Any employer or prospective employer, or agent or officer thereof, who misappropriates any such property, mingles it with his own, or uses it for any other purpose than that herein set forth is guilty of theft and shall be punished in accordance with the provisions of the Penal Code relating to theft."

Section 406 of the same code reads: "Any property put up by an employee or applicant as a part of the contract of employment, directly or indirectly, shall be deemed to be put up as a bond and is subject to the provisions of this article whether the property is put up on a note or as a loan or an investment and regardless of the wording of the agreement under which it is put up."

Appellant's basic objection to the foregoing statutes is that they constitute an invalid invasion of freedom of contract. ■ However, the validity of legislation impinging upon the right of contract is to be judged from its tendency to promote the general good. ■ And legislation which is enacted with the object of promoting the welfare of large classes of workers whose personal services constitute their means of livelihood must certainly be regarded as of direct and vital concern to every community and as calculated to confer direct or indirect benefits upon the people as a whole, thereby coming within the proper exercise of the police power, seeking as it does to promote the welfare of a large class against a real and existing danger (*De Haviland* v. *Warner Bros. Pictures, Inc.*, 67 Cal.App.2d 225, 235-237 [153 P.2d 983]).

■ The very design and purpose of the statutes here in question was to forestall a very real danger of fraud, and embezzlement, as well as danger of misappropriation of the funds of an employee deposited with an employer in trust.

The self-evident purpose of the legislation here under consideration is to protect that larger portion of the public who are employees and who, in many instances, are forced through economic necessity to find employment by meeting whatever requirements are set by a prospective employer. Under such conditions, employer and employee do not deal on an equal footing, and the force of economic conditions opens the way for fraudulent practices which the legislation here under attack seeks to abate.

Furthermore, an attack upon the constitutionality of the aforesaid Labor Code provisions, an attack analogous to the one here urged by appellant, was made in *People* v. *Pond,* 44 Cal.2d 665, 675-676 [284 P.2d 793], wherein the Supreme Court declared the sections constitutional. In so holding, the court noted, ''Defendant urges that sections 402 through 406 of the Labor Code violate the due process clause of the Fourteenth Amendment of the federal Constitution and the provisions or section 1 of article I of our state Constitution that 'all men . . . have certain inalienable rights, among which are those of . . . acquiring, possessing, and protecting property . . . ,' and that these Labor Code sections cannot be justified under the police power.

''As defendant says, the sections limit the right of contract between employer and employee. However, we agree with the following reasoning of Presiding Judge Shaw, speaking for the Appellate Department of the Superior Court in *People* v. *McEntyre* (1938), 32 Cal.App.2d Supp. 752, 755-756 [84 P.2d 560], where the constitutionality of the legislation was upheld against an argument such as that presented by defendant here: 'The right of contract is subject to regulation and limitation in many of its phases; and there is special need for such regulation in regard to the relations between employer and employee. The prospective employer and the applicant for employment, who is usually dependent on his own earnings for the support of himself and his family, do not deal on an equal footing. Especially is this true in times of depression and widespread unemployment. Experience has shown, to the extent that it may be regarded as a matter of common knowledge, that there is great opportunity for fraudulent practices, embezzlements and other forms of cheating by employers in the common custom of requiring employees to deposit so-called ''cash bonds'' with their employer . . . The usual applicant for employment, in

spite of his supposed freedom of contract, is in no position to dictate the terms of his contract of employment, or to insist that it protect him against these possibilities of loss. The Legislature has therefore deemed it necessary to provide such protection for him, and to that end has enacted that all deposits put up by him as part of the contract of employment be deemed bonds and that all such deposits be held intact as trust funds, and has prohibited any contract to the contrary. Considering such facts regarding the matter as are matters of general knowledge, this legislative conclusion is obviously one to which reasonable minds might come. It is equally obvious that the legislation enacted in pursuance of that conclusion has a reasonable tendency to abate the evil at which it is aimed. The question whether it should have been adopted is therefore purely one of legislative discretion, not of power, and we may not, if we would, interfere with that exercise of discretion.' "

In concluding its discussion on the constitutionality of the aforesaid sections, the Supreme Court further stated at page 676:

"Defendant urges that the legislation is unconstitutionally vague because it does not define 'property put up by an employee or applicant as a bond' and 'liquidating accounts' as used in section 405 of the Labor Code. He relies upon *Winters* v. *New York* (1948), 333 U.S. 507, 515 [68 S.Ct. 665, 92 L.Ed 840], where it is said, 'The standards of certainty in statutes punishing for offenses is (sic) higher than in those depending primarily upon civil sanction for enforcement. . . . There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment.' The meaning of the expressions challenged by defendant, in their context, is clear to persons of ordinary intelligence, and explicit statutory definition thereof is not necessary."

Appellant urges that in the decision just cited the reversal was based upon the fact that the accused therein was not charged in Counts I and II with a violation of section 405 of the Labor Code, and that as to the remaining two counts it was impossible in the state of the record to determine whether such convictions were based upon a permissible review of the evidence or upon a confusion which led the jury to believe that the alleged offenses against the complainant were violations of the Labor Code. That, therefore, the lan-

guage with reference to the constitutionality of the Labor Code sections was merely *obiter dictum*. However, a reading of the case does not bear out appellant's contention. One of the issues squarely presented in the Pond case was the claim that sections 402 through 406 of the Labor Code violate the due process clause of the Fourteenth Amendment of the federal Constitution and the provision of section 1 of article I of our state Constitution that, "All men . . . have certain inalienable rights, among which are those of . . . acquiring, possessing, and protecting property . . . ," and that the Labor Code sections here in question cannot be justified under the police power. A decision upon the constitutionality of the herein pertinent Labor Code provisions was therefore necessary to a decision in the Pond case.

Appellant relies upon the cases of *People* v. *Holder,* 53 Cal.App. 45 [199 P. 832], and the later case of *People* v. *Bullock,* 92 Cal.App. 785 [268 P. 1059]. However, these cases are not analogous to the one now before us. In the cited cases the testimony showed that the property alleged to have been embezzled was paid to the accused under and by virtue of a building contract entered into between the defendant and the complainant, and that the money received by defendant was not received in trust, but as and for his own money under the building contract. The holding was that the section there under attack was unconstitutional because it provided that notwithstanding the title to the money paid to the accused under his contract was vested in him he could be found guilty of embezzlement because he breached his agreement to use the money to pay certain of his bills. The legislation with which we are here confronted, as heretofore pointed out, seeks to afford protection for a large class of workers by declaring that all deposits put up by the employee as part of his contract of employment be deemed bonds; that all such deposits be held intact *as trust funds* and prohibits any contract to the contrary. The reasons why such legislation does not impinge upon the freedom of contract are clearly and concisely set forth in *People* v. *Pond, supra.*

 An appeal from "the sentence" is not authorized by law, and since the order denying the "motion to vacate pleas of guilty" was made prior to entry of judgment it is an intermediate order reviewable on appeal from the judgment and an appeal from such order will be dismissed.

394

For the foregoing reasons, the purported appeals from the sentence and from the order denying defendant's motion to vacate his pleas of guilty are and each is dismissed. The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1956.