Richard C. Hoole *v.* William G. Dorroh.

1. Constitutional Law. *Class legislation. Code* 1892, § 1068.

   The statute, code 1892, § 1068, which forbids, under civil and criminal penalties, any person interfering with a tenant or laborer of another during the continuance of the lease or contract of service, is not class legislation, since it applies to all persons; and, as it condemns only a breach of civil duty, is not violative of either the federal or state constitutions.

2. Enticing Servants. *Double damages. Code* 1892, § 1068.

   Unless a plaintiff, suing for a violation of the statute, code 1892, § 1068, offers satisfactory evidence of damages sustained, he cannot recover.

3. Same. *Common law. Code* 1892, § 1068.

   At common law, if any person hired or retained the servant of another, and the servant was thereby caused to leave his master, the latter had an action for damages against both the hirer or retainer and the servant. The statute, code 1892, § 1068, forbids the breach of civil duty which was thus recognized at common law.

From the circuit court of Madison county.

Hon. Robert Powell, Judge.

Dorroh, a farmer, employed Abe Green to work on the farm during the year 1897. Dorroh and Abe had trouble with each other about Abe's gobbler getting into Dorroh's yard, and Abe's pigs getting into Dorroh's rye patch; and Abe, vexed by com-

plaints of these matters, notified Dorroh that he would work for him no longer and would leave the place. Dorroh forbade his going. Abe quit work and started out to find a new home. In about a week he made an arrangement with appellant for the rent of land, and then moved his goods from Dorroh's farm to the roadside, and appellant sent a wagon and hauled the goods to the leased premises. Thereupon Dorroh brought his suit under the statute, code 1892, § 1068, for double damages against Hoole, and the jury awarded the plaintiff a verdict for $60. The defendant moved the court to set aside the verdict and judgment entered thereon. The motion was overruled, and Hoole appealed.

*F. B. Pratt,* for appellant.

This action was brought under § 1068 of the code of 1892. The point to which I invite attention is the meaning of the words "before the expiration of his contract," and the meaning of the words at the end of the section, "damage which he may have sustained by reason thereof." It is not always a safe rule, or a true rule of construction, to decide according to the strict letter of the statute, but the courts will consider its fair meaning, and will explain it differently from the letter, in order to pursue the intent. Broom's Legal Maxims, 536. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. *United States* v. *Kirby,* 7 Wall. (U. S.), 485. The construction given in the opinion of this court in *Armistead* v. *Chatters,* 71 Miss., 509, to the clause "before the expiration of his contract," is to make it mean "before the expiration of the time for which the laborer had contracted." I submit that this construction would, in many instances, make the statute inconsistent and lead to injustice, oppression and absurd consequences. I contend that the correct construction of this phrase is to make it mean "before the termination of the contract," whether such termination is the result of a breach of the contract on the part of the la-

borer or on the part of the employer, or the result of a mutual rescission of the contract by employer or employe.

As to the offenses mentioned in the statute of "wilfully interfering with," "enticing away," "inducing a laborer to leave," "inducing a renter to leave," the phrase before the expiration of contract can have no application unless we give it the construction of termination of contract, for how can a laborer be interfered with, enticed away or induced to leave his employer after he has already broken his contract and left his employer? and how can a renter be induced to leave the rented premises after he has already moved away? But give it the construction which I claim for it, and it is consistent in imposing a penalty for enticing away, etc., before termination of contract for any cause. If the legislature had intended to make it unlawful for anyone to employ a laborer after he had quit his former employer, and before the end of the time for which he had contracted with him, would it not have made an exception of cases where the laborer had quit his employer for just cause, as where he did not pay him as agreed, where he failed to furnish him sufficient food as agreed, where he treated him in a cruel and brutal manner, and where he discharged him and refused consent for anyone to employ him?

The statute is but declaratory of the common law on the subject, enlarging its scope and affixing penalties, etc. The purpose of the legislature was manifestly to declare the common law doctrine, and to extend its scope and to make it effective by penalty of double damage and fine. And we must look to the decisions under the common law doctrine in expounding and construing this statute. At common law it was necessary, in order for the master to recover, that the act should have been committed while employe was in actual service, before dissolution of relation of master and servant, and that the act of the defendant was the cause of the dissolution. Says the court, in *Butterfield* v. *Ashley*, 2 Gray (Mass.), 254: "Inducements must be presented to the servant, while he is in the service,

which caused him to leave it; after he has, of his own accord, left the service, and is out of it, he cannot be enticed from it.'' Says the court, in *Caughey* v. *Smith*, 47 N. Y., 250: ''To maintain an action for enticement from service, it must appear that the servant was in actual service of the master, and that the moving cause of dissolution was the inducement held out by the defendant.'' If, before the servant had met with the defendant there had been an abandonment of the service, it cannot be maintained that there was an enticement therefrom. If I am correct in the proper construction of the clause, ''before expiration of his contract,'' then the defendant was guilty of no violation of the statute. For the defendant had no interview with Abe Green until after Abe had violated his contract and quit work and had been looking for employment for several days, and appellant did no act until after Abe had moved his effects from appellee's premises.

But if I am wrong in the construction of both clauses of the statute, and the construction given in *Armistead* v. *Chatters* is the correct one, then I submit that the statute is unconstitutional in this: It is in violation of the constitution of this state, which reads: '' No person shall be deprived of life, liberty or property except by due process of law.'' The statute, whether construed as in *Armistead* v. *Chatters* or as construed by the writer, is in violation of section one of the fourteenth amendment of the constitution of the United States, which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, and which clause has been construed as prohibitory of class legislation. I claim that our statute, even with the construction contended for, is open to the objection that it is class legislation. It makes a rule for laborers and for employers of laborers, which does not apply to employers and employes generally.

''A person living under our constitution has the right to adopt and follow such lawful and industrial pursuit, not injurious to the community, as he may see fit. Liberty, in the sense

used in the constitution, means the right not only of freedom from servitude, etc., but the right of one to live and work where he will; to earn his livelihood in any lawful calling, trade or vocation." *People* v. *Golson*, 109 N. Y., 389.

The right to contract for labor, which is property, is protected by the constitution. This class of legislation is a species of sumptuary legislation, which has been condemned as an attempt to degrade the intelligence, virtue and manhood of the American laborer. *State* v. *Goodwell*, 33 W. Va., 179. In *Branville Coal Co.* v. *People*, 147 Ill., 76, it is said: "Labor is the prime foundation of all wealth." In *Lesp* v. *St. Louis*, 58 Ark., 407, it is said: "The right to acquire and possess property necessarily includes the right to contract. Of all the rights of persons it is the most essential to human happiness." *Law* v. *Rees*, 41 Neb., 127; *State* v. *Goodwell*, 33 W. Va., 179; *Low* v. *Rees*, 41 Neb., 670; *Ritcher* v. *People*, 155 Ill., 98; *Gulf Railroad, etc.*, v. *Ellis*, 165 U. S., 150; *Yock Woo* v. *Hopkins*, 118 *Ib.*, 356; *Sutton* v. *State*, 96 Tenn., 710; *Frorer* v. *People*, 161 Ill., 171; *Godcharles* v. *Wyman*, 112 Pac. Rep., 431; *Millett* v. *People*, 117 Ill., 294; *Ramsey* v. *People*, 142 *Ib.*, 280. The verdict was wrong, because no damages whatever were proved.

*J. B. Chrisman*, for appellee.

The statute, code 1892, § 1068, condemns the appellant to damages on his own testimony. It was intended to meet the very subterfuge under which he hoped to escape. It allows damages to the employer when they result from (*a*) wilful interference, (*b*) enticing away, (*c*) knowingly employing or (*d*) inducing a laborer to break his contract. The appellant evidently proceeded on the idea that if the laborer renounced his contract and left the premises of the employer, he was at liberty to employ him. But see *Armistead* v. *Chatters*, 71 Miss., 509. "I won't go on Dorroh's place to move you off," he says, "but if I find your effects in the big road Wednesday

morning, I will send my wagon for you." This sort of talk he did not count as being an enticement, and after the employe moved into the big road and had quit Dorroh, it was no wilful interference; moreover, it was not knowingly employing Abe to rent him land.

Abe Green wandered about for a week, in the midst of crop time, "searching the law," as he says, but holding on to Dorroh's cabin till he found a sympathizer in Hoole. He would, have ceased pouting and gone back to work had he not found a congenial friend in Hoole. There ought to be no prejudice against this law, for it is as old as the common law itself, and is in the interest of the laborer as well as the employer, since it makes peace and contentment. Its beneficence finds a fitting illustration in the peculiar condition that surrounds us as an agricultural people. Who does it restrain in any way? Not a just man or a good neighbor. The instincts of such a man will not sanction, but revolt at what this law condemns.

The evidence is ample to sustain this verdict, under the statute, on any one of the four grounds which, upon analysis, it gives, provided there is proof of damages. It must be admitted that the plaintiff is a little short on proof of damages. But there is sufficient evidence to sustain the verdict. There was circumstantial proof of damages. In the talk between the parties when plaintiff, as a good neighbor, sought to compromise, he consented to place his loss at $50, by reason of loss of service, and besides he had lost $30 in supplies furnished the laborer. It never was questioned or disputed that this estimate was fair and just.

Argued orally by *F. B. Pratt*, for the appellant, and by *J. B. Chrisman*, for appellee.

TERRAL, J., delivered the opinion of the court.

This action is founded upon § 1068, annotated code 1892. The causes of action stated by the plaintiff below comprise all the grounds of action provided for by said section, but we find

in the record no evidence of any of said causes of action, except of the one for knowingly employing Abe Green, a tenant of the plaintiff, by the defendant, some time during the unexpired service of said tenant with plaintiff. The plaintiff, Dorroh, obtained judgment against Hoole for $60 damages, and Hoole appealed.

It is insisted by the appellant that the statute is unconstitutional, and should be so declared by this court. We have not been able to see wherein it is obnoxious to any of the provisions of the federal or state constitutions. It is certainly not class legislation, at least as to persons, for it declares if "any person" shall wilfully interfere with a laborer or tenant of another, during the continuance of the contract or tenancy of such laborer or tenant, etc.; it applies to all persons, white or colored, high or low, and forbids only a breach of civil duty. It is true that it applies to a particular class of contract rights, but because it does not apply to all contract rights can be no objection to its validity. A, by force or threats, drives the tenants of B off the leased premises, and thereby, in some substantial manner, interferes with a compliance by said tenants of their duty towards their landlord; now, if A be indicted or sued for such wilful wrong, does it lie in his mouth to say that because other breaches of civil duty in relation to contracts are not indictable or suable, therefore the law that inflicts a penalty, or double damages, upon the breach of this one is unconstitutional? We think not. The constitution, in respect to civil rights, applies to persons only, not to things. Things take care of themselves, and damages to repair their loss or injury is the measure of protection awarded them.

Our bill of rights was ordained to secure the rights and liberties of the common law, and, in some cases, to enlarge them; but it was never supposed that the civil rights of person or property were insecure under the common law. Its admirers boasted that involuntary servitude, without the default of the subject, could not exist beneath its shield, and that at the instant a slave set foot upon English soil, he became a free man.

By the elementary writers on jurisprudence, the common law was called common right or common justice. In magna charta it is called right. 1 Tho. Coke, * 11. And yet the common law supplied a remedy for breach of civil contract or duty. Blackstone (1 Bk., * 429) says: "If any person do hire or retain my servant, being in my service, for which the servant departeth from me and goeth to serve the other, I may have an action for damages against both the new master and the servant or either of them. The reason and foundation upon which all this doctrine is built seem to be the property that every man has in the service of his domestics, acquired by the contract of hiring and purchased by giving them wages."

The action is founded upon common law principles, and it only serves to give double damages, which many statutes in England and this country have done without being considered objectionable to right or justice. The English statute of Gloucester gave treble damages for waste.

So, our legislature, considering the importance of agriculture as the foundation of our wealth and prosperity, and the necessity of protecting the rights relating to its advantage, has seen fit, in furtherance of the common good as well of the laborers and tenants as of employers and landlords, "to incite and constrain" the former to observe the duties imposed upon them by contract. The statute protects contract rights; it destroys none. The power of the state to pass such statutes is founded upon the police power, "by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish, for the intercourse of citizens with citizens, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is consistent with a like enjoyment of rights by others." Cooley Con. Lim., * 572.

The decisions to which we have been referred by the learned counsel concern mainly the protection of right; but this statute

is directed against wrong. It is intended for the protection of right, and to inflict damages upon one who knowingly violates the right of another to his injury. We may add this statute applies not only to persons engaged in agriculture, but to all laborers and employers in other cases of employment.

We conclude that the statute is not antagonistic to the state or national constitutions, nor violative of the fundamental principles of justice, and that it is clearly within legislative discretion. Nor do we think the statute subject to the criticism of counsel, wherein he supposes that "though the employer drives off the laborer, or refuses to pay him, or beats him," still the laborer is held within the grasp of the employer. The statute must have a reasonable construction. If the employer or landlord breaks his contract in some substantial respect, and especially in the ways mentioned, the laborer or tenant would be discharged from the obligation of the contract; and whatever absolves the laborer or tenant would be a shield for the protection of the new master or landlord.

The only evidence as to the damages suffered is that of Dorroh, who testified that he let Abe Green, the tenant, have two pairs of shoes, one barrel of meal and some tobacco; but he failed to state the quality or value of the shoes, the price of the meal or the quantity or value of the tobacco. If this uncertain evidence would sustain a verdict for any specific amount, it must be apparent that it does not support a verdict for $60.

*Reversed and remanded.*