Waldrup *v.* State.

(Division B. June 10, 1929.)

[122 So. 771. No. 27868.]

See, also, 150 Miss. 302, 116 So. 432.

*H. B. Greaves,* of Canton, for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

ETHRIDGE, P. J., delivered the opinion of the court.

The appellant was convicted in the circuit court of enticing a laborer or employee from the premises of one Cain in Madison county, Miss. The prosecution was based upon section 917, Hemingway's 1927 Code, chapter 160, Laws of 1924, reading: "If any person shall wilfully interfere with, entice away, or who shall knowingly employ, or who shall in any manner induce a laborer or renter who has contracted with another person for a specified time to leave his employer or the leased premises, before the expiration of his contract without the consent of the employer or landlord in writing signed by said landlord or employer under or with whom said laborer had first contracted, he shall, upon conviction, be fined not less than twenty-five dollars nor more than one hundred dollars, and in addition shall be liable to the employer or landlord for all advances made by him to said renter or laborer by virtue of his contract with said renter or laborer, and for all damages which he may have sustained by reason thereof. The provisions of this section shall apply to minors under contract made by a parent or guardian."

The prosecution was begun in a justice of the peace court by the filing of an affidavit which followed the language of the statute without specifying which particular act, willful interference, knowingly employed, or inducement of laborer to leave premises, was depended upon; but there is no demurrer to the affidavit.

The principal assignment of error is that the evidence is insufficient to sustain a conviction.

The only proof for the state was that Cain, the landlord, made a contract with one Mr. Slater, and Mrs. Simmes, who was then thought to be Mrs. Slater, she and Slater having married; but Slater being an undivorced married man, said marriage was void. The state's testimony is that this contract was a verbal one

made in November, 1925, by which Slater and Mrs. Simmes were to work a share crop on the premises of Cain for the year 1926, and that, accordingly, they moved upon his premises and began a crop, but about the 7th of May, 1926, Slater was arrested on a charge of bigamy and carried to jail in Yazoo county, Miss. What became of that prosecution does not appear. After he was arrested, Mrs. Slater or Simmes had a letter written to her son who lived in Yazoo county to come for her, and her son and Mr. Waldrup came in a car for her on Saturday following the arrest of Slater and carried her to the home of her son, Mr. Simmes, in Yazoo county. On the following Monday, three wagons came to the Cain place where Mrs. Slater, or Simmes, had lived, and proceeded to load her household effects into said wagons for the purpose of moving her to her son's home. Cain appeared and forbade them to move her from his place. At the time this happened, one of her sons, a Mr. Simmes, and two other young men, Messrs. Upton, were in charge of the wagons. They suspended operations until Mr. Waldrup came up. He had gone by Lexington to take some one going to that point, and had come from Lexington to the Cain place, where Mrs. Slater (Simmes) had been living. When Waldrup reached the premises, he was informed of what Cain had said, and went to a justice of the peace to see about the matter. The justice of the peace testified that Waldrup came there alone and asked him about the law pertaining to the matter, and that he told him he did not think they could move Mrs. Slater (Simmes) without paying to her landlord her debts to him, which he understood would be about one hundred dollars; that Waldrup said he would see Cain, and the justice of the peace stated if the matter could not be settled, for Waldrup to come back. Waldrup did not go back, but the justice of the peace saw him passing a few hours later, and was

told that Waldrup had not seen Cain, but would do so later; and that Waldrup went on accompanying the wagons.

One or two other witnesses saw Waldrup in company with Simmes, the son of Mrs. Slater (Simmes), and also saw him (Waldrup) with the wagons on Monday morning.

There was no evidence for the state that Waldrup had any conversation, or did any act with reference to dissatisfying Mrs. Slater (Simmes), or in any way enticing her away, or interfering with the contract; the only proof being that he was present and assisted her to move to her son's home, aiding in the moving, and that he did refuse to pay the amount she owed Cain.

When the state closed its case, the appellant moved the court to strike out the evidence for the state and grant a peremptory instruction for appellant, which was overruled. Thereupon, appellant introduced Mrs. Slater (Simmes), who testified that she left Cain's premises of her own accord; that when Slater was arrested she was unwilling to stay at the place and undertake to make a crop with her children; and that she had a conversation about the matter with some of her neighbors, and that a neighbor wrote to her son to come and get her, which the son did in company with the wagons. She testified that Waldrup did not say anything to her to induce her to abandon the contract or to employ her or to create any dissatisfaction with her arrangements. She also testified that she had not made any contract with Cain, but that Slater had made the contract with him, and that she did not do any work on the farm up to the time she left the premises.

There was other testimony for the defendant that John Simmes, the son of Mrs. Slater (Simmes), received the letter referred to and went to Waldrup to get him to go for his mother, showing the letter to Waldrup;

that Waldrup offered him his car to make the trip himself, but Simmes insisted that Waldrup go along; that Simmes drove the car up near to the residence of his mother and left Waldrup in the car and went down to the house for his mother; and that she returned with him to car and moved to his place and lived in his home with him and his family for a week or ten days, when the wife of John Simmes and his mother had a disagreement, and thereupon John Simmes went to Waldrup to get a vacant house located on the place which Waldrup was managing. It was also proved for defendant, appellant, that John Simmes hired the wagons and drivers to go after his mother, and moved his mother upon his place and not upon the place of Waldrup.

Waldrup testified that he had nothing to do with the moving of Mrs. Simmes, or Slater, from Cain's place, except to go with John Simmes, her son, and let him use his (Waldrup's) car; that he made no contract with Mrs. Slater (Simmes) and had no conversation with her with reference to abandoning her contract, or enticing her or employing her; and further testified that on Monday morning he went to the justice of the peace in company with another son of Mrs. Slater (Simmes), and the justice of the peace told him it was all right for him to move the parties; that they could not prevent him from moving, but not to have any fuss or difficulty about the matter. Waldrup was supported in this statement by young Simmes, but was disputed by the justice of the peace.

In our opinion the evidence wholly fails to make out a case under the above statute. It was shown, without dispute, by appellant's evidence, that Mrs. Slater (Simmes) abandoned her contract of her own free will and accord, without aid or suggestion from Waldrup whatever. The evidence for the state, at most, was only sufficient to create a mere presumption that he, being

present, was aiding and assisting in the moving of Mrs. Simmes; but this presumption must yield to the proof. The state wholly failed to prove any conversation, inducement, or act on the part of Waldrup to render Mrs. Slater (Simmes) dissatisfied with her contract. He was acting entirely upon the theory that she had already determined to leave the premises and abandon her contract, and, in fact, had done so.

The statute was designed to prevent outsiders from willfully interfering with a contract while it was a contract, or to entice a person from the premises of another with whom they had contracted, or to knowingly employ a person in the employ of another before such employment has been abandoned. The matter is fully discussed in *Thompson* v. *Box,* 147 Miss. 1, 112 So. 597, and other cases referred to in that opinion. To extend the statute by construction would destroy the wholesome statute by rendering it in conflict with the Thirteenth and Fourteenth Amendments to the Federal Constitution, and in similar provisions the state Constitution. As stated in preceding cases, the court will not, where there are two possible constructions, adopt that which will endanger the constitutionality of an act in preference to another reasonable construction which may be adopted.

It follows from these views that the judgment must be reversed and appellant discharged.

*Reversed, and appellant discharged.*